United States District Court
Southern District of Texas
**ENTERED**
March 28, 2023
Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| EVERETT DALE WEBB, | § | |
| | § | |
| Petitioner, | § | |
| VS. | § | CIVIL ACTION NO. 4:21-0030 |
| | § | |
| BOBBY LUMPKIN, | § | |
| | § | |
| Respondent. | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

State inmate Everett Dale Webb is incarcerated in the Texas Department of Criminal Justice–Correctional Institutions Division (TDCJ).  Webb filed a *pro se* petition for a writ of habeas corpus seeking relief from a state conviction (Dkt. 1; Dkt. 7; Dkt. 15).   The respondent filed a motion for summary judgment (Dkt. 30) and a copy of the state court records (Dkt. 31).  Webb responded (Dkt. 38; Dkt. 44) and the respondent filed a reply (Dkt. 48).  Webb's claims now are ripe for decision.  Having considered the petition, briefing, all matters of record, and the applicable legal authorities, the Court determines that summary judgment should be **granted** and the petition should be **dismissed** for the reasons that follow.

## I.   BACKGROUND

### A.   Procedural Background

On April 24, 2017, a jury convicted Webb of indecency with a child by sexual contact, enhanced, in Case No. 14-03111-CRF-85, 85th District Court of Brazos County,

Hon. Kyle Hawthorne presiding. The court sentenced Webb to 75 years in TDCJ (Dkt. 31-14, at 54-57).

On May 15, 2019, the Tenth Court of Appeals affirmed Webb's conviction. *See Webb v. State*, 575 S.W.3d 905 (Tex. App.–Waco May 15, 2019, pet. ref'd); Dkt. 31-3 (opinion); Dkt. 31-5 (judgment); Dkt. 31-6 (mandate). On October 9, 2019, the Court of Criminal Appeals refused his petition for discretionary review.  Webb did not file a petition for a writ of *certiorari* in the United States Supreme Court.

On December 15, 2020, Webb executed an application for state habeas relief (WR-92,920-01) (Dkt. 31-23, at 5-26). The trial court entered findings of fact and conclusions of law recommending denial of relief (*id.* at 154-90).  On August 25, 2021, the Court of Criminal Appeals denied the application without written order on the findings of the trial court without a hearing and on the court's independent review of the record (Dkt. 31-28).

On October 14, 2021, Webb filed a supplemental application in the Court of Criminal Appeals bringing four grounds for relief (Dkt. 31-31, at 4-11).  On November 16, 2021, he filed a second supplemental application bringing four additional grounds for relief (Dkt. 31-32, at 8-11).  The Court of Criminal Appeals did not act on either supplement.

On January 4, 2021, Webb filed his petition for a writ of habeas corpus in these federal proceedings (Dkt. 1; *see* Dkt. 7).   The Court stayed the proceedings on Webb's motion because his state habeas application was pending in state court (Dkt. 9).   On September 29, 2021, the Court reinstated the proceedings and granted Webb leave to amend his petition (Dkt. 11).  Webb then filed a second amended petition raising sixteen

claims for relief (Dkt. 15).

The respondent moved for summary judgment (Dkt. 30), and Webb filed a *pro se* response (Dkt. 38).  After the motion was ripe, counsel appeared for Webb and filed an unopposed motion for leave to file a supplemental response (Dkt. 42). The Court granted leave and Webb then filed a supplemental response (Dkt. 44), to which the respondent filed a reply (Dkt. 48).

### B.    Factual Background

Webb was charged by indictment with indecency with a child by sexual contact, enhanced by a prior felony conviction. The jury found Webb guilty and Webb pleaded true to the punishment enhancement.  The court sentenced him to 75 years in TDCJ.

Although the appellate court did not summarize the facts of the crime, the State's brief on appeal provides a summary (Dkt. 31-8; *see* Dkt. 31-7 (defendant's brief on appeal)).  The complainant, R.G., testified at trial that she was acquainted with Webb because he dated her cousin, Sharell Davis.  She recounted the details of September 23, 2013, the night of the crime:

> R.G. testified that she was nineteen years old and that she had attended A&M Consolidated High School. (4 RR 29). R.G.'s mother was Charisma Gafford. (4 RR 29). . . .  R.G. stated that she knew Appellant because he was in a dating relationship with her cousin, Sharell Davis. (4 RR 30-31). R.G. was just an acquaintance with Appellant. (4 RR 31).
>
> R.G. stated she saw Appellant every day for about a week. (4 RR 31). Until the night of September 26, 2013, Appellant's behavior never made R.G. feel scared or worried. (4 RR 32).
>
> On September 26, 2013, R.G. was staying at her mother's house on Cypress Bend. (4 RR 32). R.G. was sixteen years old at the time. (4 RR 32). At her

mother's apartment that night was R.G., her mom, her sister, her cousin, and Appellant. (4 RR 33). At some point, R.G. left her mother's apartment and went outside to clear her head. (4 RR 33-34). R.G. suffered from anxiety attacks, and she had previously had an argument with her sister. (4 RR 33-34). When R.G. went outside, Appellant was sitting in his truck. (4 RR 34). R.G. started walking to a store. (4 RR 35). It was dark outside, and Appellant came up to her and told R.G. to get in the truck. (4 RR 35-36). R.G. got in Appellant's truck, and R.G. asked Appellant to take her to the store to get a drink and Appellant agreed. (4 RR 36). When Appellant and R.G. were in his truck, Appellant started talking and telling R.G. that he could give her money or buy her things like a phone. (4 RR 36-37).

Appellant did not take R.G. to the store that she wanted to go to, but he ended up taking her to another store – a Shell gas station. (4 RR 37). The Shell station was in an area that R.G. was unfamiliar with, so R.G. did not try to get out of the car. (4 RR 37-38). Appellant got out of the truck to walk to the store; however, he started walking back when he received a phone call from his brother. (4 RR 38). They then drove to the house of Appellant's brother. (4 RR 38-39). R.G. did not get out because Appellant told her not to move. (4 RR 39). R.G. also testified that she did not call anyone because she did not have any minutes on her TracFone, but that she did text her mom. (4 RR 39). R.G. did not give her mom the exact details of where she was because she was scared Appellant may be able to access her phone since it did not have a passcode. (4 RR 39).

When Appellant came back from his brother's house, he got back into the truck and offered R.G. marijuana to smoke. (4 RR 40-41). R.G. did not smoke the marijuana and told Appellant that she did not smoke. (4 RR 41). Appellant's brother never came out of the house. (4 RR 40). When they left the house of Appellant's brother, Appellant did not take her home, but took R.G. to Williamson Park. (4 RR 41-42). R.G. was scared, did not know what was going on, and asked Appellant to take her home. (4 RR 42). Instead, Appellant drove into a parking lot in Williamson Park and then got closer to R.G. (4 RR 42). Appellant ripped up R.G.'s tank top and middle part of her bra. (4 RR 42). Appellant also started to kiss and lick R.G.'s ear and neck and around her breast area. (4 RR 42). Appellant kept trying to stick his hand up into R.G.'s shorts from the bottom part. (4 RR 42). Appellant tried to take R.G.'s shorts off, but R.G. had her legs tight and held her hands between her legs to prevent that from happening. (4 RR 42). Appellant was never able to touch R.G. below the waist with his hand. (4 RR 42-43).

Appellant did touch R.G. on her breast area with his hands over her shirt. (4 RR 43). R.G. stated that at this point she kept trying to open the door and get out of the vehicle. However, the door was locked, and she was not able to open the door using the handle. (4 RR 43). During this time, R.G. kept telling Appellant that "I haven't had sex and I'm not that type of girl and I wanted to go home and I told him to stop." (4 RR 44). R.G. never tried to kiss Appellant back or anything similar. (4 RR 44). R.G.'s mother sent her a text around midnight stating that she needed to get home, but R.G. did not remember where she was when she received the text. (4 RR 44). After they left the park, R.G. told Appellant she needed to go home and that she had school in the morning. (4 RR 45). Appellant drove in front of her mother's house, where he slowed down, but did not stop. (4 RR 45). R.G. was able to get out of the vehicle at that point. (4 RR 45). R.G. was able to open the door from the outside because the window was down. (4 RR 46). From that point, R.G. walked home and then she immediately told her mother what happened. (4 RR 46). Before calling the police, R.G.'s cousin Sharell made a call to Appellant to see if he would admit to what happened with R.G. (4 RR 47). At that point, the police were called. (4 RR 47). A few days later, R.G. spoke to another police officer at her high school. (4 RR 47). R.G. provided him details of what happened that night. (4 RR 47). After that night, R.G. never had any other interaction with Appellant. (4 RR 49-50).

(Dkt. 31-8, at 10-13; *see* Dkt. 31-7, at 9-10).  R.G. also testified about her conversations with Detective Amaya, who investigated the case, and Officer Dunford, who came to the scene shortly after the crime:

On cross-examination, R.G. stated she told Detective Amaya who interviewed her at her school, that Appellant ripped her bra and tank top. (4 RR 50- 51). R.G. also explained that while Appellant was not able to touch her in her genital area with his hand, Appellant would try to reach up into her shorts. (4 RR 51-52). R.G. clarified that while she told Detective Amaya that Appellant tore her tank top off and bra off, Appellant actually tore the two items up. (4 RR 52-53). R.G. was wearing the ripped clothing when she arrived at her mother's house. (4 RR 53). R.G. stated that she told Officer Dunford about the ripped clothing that night. (4 RR 53-54). R.G. also told Detective Amaya that her uncles (her mother's brothers) came and picked her up. (4 RR 54-55). R.G. clarified that they picked her up from outside the apartment complex gates and walked her the rest of the way. (4 RR 55). R.G. was not sure if she told Detective Amaya that Appellant went inside the store

and purchased a tea drink for her even though she testified earlier that Appellant did not go inside the store. (4 RR 55-56).

R.G. testified that, when Officer Dunford arrived at the scene, her mom, her cousin (Sharell), and her uncles were present. (4 RR 56-57). Officer Dunford did not speak with R.G.'s uncles. (4 RR 57). R.G. testified that Officer Dunford did speak to Sharell. (4 RR 57). R.G. testified that she was also texting a friend, Nathan Hammond at the same time she was texting her mother that night. (4 RR 58-59). R.G. was not sure if she showed officers that text and that some of the text messages were deleted by her baby cousin. (4 RR 59). R.G. also stated that Appellant and his friend were in her mother's apartment earlier that day. (4 RR 61). R.G. did not suffer any injuries from the incident. (4 RR 63). R.G. stated that, when R.G. opened the door in order to exit the truck, the window was down, but the window in the truck was not down the entire time. (4 RR 64). Earlier when the window was up, R.G. tried to open the door but could not. (4 RR 64-66). On redirect examination, R.G. testified that Appellant rolled down the window because she mentioned it was hot. (4 RR 88).

(Dkt. 31-8, at 13-15). Dunford took the stand and testified that he had spoken with R.G. and her mother; that R.G. was "visibly shaken," that her "eyes were watery," and that "she was gritting her jaw"; and that he had not noted damage to R.G.'s clothing (*id.* at 9-11). The State also presented two witnesses, T.T. and C.H., who testified that Webb had engaged with improper sexual conduct with them in the past (*id.* at 15-18; *see* Dkt. 31-7, at 10-12). The jury found Webb guilty.

The appellate court affirmed Webb's conviction, overruling three issues raised by Webb. On the first issue, the court held that the trial court had not abused its discretion when overruling Webb's objection to the extraneous-offense evidence. The court determined that Webb's counsel had advanced the "defensive theory of fabrication," and thus "opened the door to the use of extraneous-offense evidence to rebut that defense," and that the extraneous offenses proffered by the State were "sufficiently similar to the offense

charged in this case." *Webb*, 575 S.W.3d at 910.  The chief justice dissented, opining that admission of the extraneous-offense evidence was error because Webb's counsel had attacked the victim's truthfulness but had not raised the defensive theory of fabrication:

> [D]oing nothing more than revealing the inconsistencies in the victim's story in an effort to create reasonable doubt in the minds of the jury, which is nothing more than the most basic form of trial advocacy, should not open the door to the admission of extraneous offense evidence.
>
> Moreover, if there is not a distinction, the defendant's attorney is on the horns of a dilemma. If the attorney does not engage in basic cross-examination or take other available steps to cast doubt on the credibility of the State's witnesses, most often the victim, then the attorney will be deemed ineffective. But if the attorney does engage in what some would characterize as an "attack" on the victim's credibility, the attorney will have opened the door to the introduction of extraneous offenses and then be deemed ineffective. Damned if you do and damned if you don't; and either way, the defendant is essentially left without a zealous advocate.
>
> We need a brighter line; or possibly, we need a line.
>
> In this case, Webb's attorney did not cross the line that I think is there. The trial court erred in holding that the line was crossed and, thus, in allowing the introduction of the damning extraneous offense evidence. The very fact that the State needed this evidence, as found by the Court in its subsequent Rule 403 analysis, suggests just how important it was in swaying the jury. Admission of the extraneous offenses allowed the jury to convict Webb using this character conformity evidence. I would reverse the trial court's judgment and remand this proceeding for a new trial so that the State will be required to try Webb on the charged offense and not simply for a determination of whether the allegations are in conformity with his character.

*Id.* at 914-15 (Gray, C.J., dissenting); *see* Dkt. 31-4.  On the second issue, the court rejected Webb's argument that the probative value of the extraneous-offense evidence was not substantially outweighed by the danger of unfair prejudice, and therefore held that the trial court had not abused its discretion by overruling Webb's objection under Rule 403.  *Webb*,

575 S.W.3d at 912.  On Webb's third issue regarding a limiting instruction, the court held that Webb had failed to preserve error.  *Id.* at 912-13.

On December 15, 2020, Webb filed his application for state habeas relief.  He raised six claims, including ineffective assistance of trial counsel, ineffective assistance of appellate counsel, sufficiency of the evidence, and issues related to the extraneous-offense evidence (Dkt. 31-23, at 5-26; *see id.* at 27-45 (memorandum)).  The trial court designated issues and instructed Webb's prior counsel to file affidavits (*id.* at 99-100).  Webb's trial counsel filed an affidavit dated May 13, 2021, stating that he "hotly contest[ed]" Webb's allegations regarding his representation at trial (*id.* at 112-16).  His appellate counsel also filed an affidavit (*id.* at 110-11).  On July 6, 2021, Webb filed a "supplementation" raising an additional claim for relief (*id.* at 152).

On July 16, 2021, the trial court entered findings of fact and conclusions of law recommending that habeas relief be denied (*id.* at 154-90).  The court found that the affidavits submitted by trial and appellate counsel were "credible [and] consistent with the record" and that each provided "sufficient information to address [Webb's] claims" (*id.* at 155).  It further found that "evidence proved that [Webb] sexually abused the victim, R.G., who was then under the age of 17, by touching R.G.'s breast" (*id.*).  Webb then filed two supplements in the trial court dated October 11, 2021 (Dkt. 31-31, at 4-11) and November 3, 2021 (Dkt. 31-32 at 8-11), raising a total of eight additional habeas claims.   The Court of Criminal Appeals did not address the additional claims.

On December 3, 2021, after the state proceedings had concluded and the Court reinstated this federal action, Webb filed an amended petition that raises sixteen claims for relief (Dkt. 15).  On May 26, 2022, the respondent filed a motion for summary judgment (Dkt. 30) seeking dismissal of all claims.

## II.   LEGAL STANDARDS

### A.   *Pro Se* Pleadings

Although Webb is now represented by counsel, he filed his federal petition *pro se*. Federal courts do not hold *pro se* habeas petitions "to the same stringent and rigorous standards as . . . pleadings filed by lawyers."  *Hernandez v. Thaler*, 630 F.3d 420, 426 (5th Cir. 2011) (cleaned up).  "The filings of a federal habeas petitioner who is proceeding *pro se* are entitled to the benefit of liberal construction."  *Id.*

### B.   The Anti-Terrorism and Effective Death Penalty Act

This federal petition for habeas corpus relief is governed by the applicable provisions of the Anti-Terrorism and Effective Death Penalty Act (AEDPA).  *See Woodford v. Garceau*, 538 U.S. 202, 205-08 (2003); *Lindh v. Murphy*, 521 U.S. 320, 335-36 (1997).  Under AEDPA, federal habeas relief based upon claims that were adjudicated on the merits by the state courts cannot be granted unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court

proceeding." 28 U.S.C. § 2254(d); *Early v. Packer*, 537 U.S. 3, 7-8 (2002); *Cobb v. Thaler*, 682 F.3d 364, 372-73 (5th Cir. 2012).

Federal courts look to the "last reasoned opinion" as the state court's "decision." *Salts v. Epps*, 676 F.3d 468, 479 (5th Cir. 2012); *see Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). "Where a state court's decision is unaccompanied by an explanation," and the lower courts did not issue a reasoned opinion, "the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Harrington v. Richter*, 526 U.S. 86, 98 (2011); *see Johnson v. Williams*, 568 U.S. 289, 293 (2013) (holding that there is a rebuttable presumption that the federal claim was adjudicated on the merits when the state court addresses some claims, but not others, in its opinion).

Review under AEDPA is "highly deferential" to the state court's decision. *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam). To merit relief under AEDPA, a petitioner may not merely show legal error in the state court's "decision." *White v. Woodall*, 572 U.S. 415, 419 (2014) (stating being "merely wrong" or in "clear error" will not suffice federal relief under AEDPA). AEDPA review exists only to "guard against extreme malfunctions in the state criminal justice systems." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (cleaned up). "[F]ocus[ing] on what a state court knew and did," *Cullen v. Pinholster*, 563 U.S. 170, 182 (2011), AEDPA requires inmates to "show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Woodall*, 572 U.S. at 419-20 (cleaned up). "If

this standard is difficult to meet, that is because it was meant to be." *Richter*, 562 U.S. at 102.

For questions of law or mixed questions of law and fact adjudicated on the merits in state court, this Court may grant habeas relief under 28 U.S.C. § 2254(d)(1) only if the state court decision "was contrary to, or involved an unreasonable application of, clearly established" Supreme Court precedent. *See Kittelson v. Dretke*, 426 F.3d 306, 318 (5th Cir. 2005). Under the "contrary to" clause, this Court may afford habeas relief if the state court "reaches a legal conclusion in direct conflict with a prior decision of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts." *Matamoros v. Stephens*, 783 F.3d 212, 215 (5th Cir. 2015) (cleaned up). To constitute an "unreasonable application" of clearly established federal law, the state court's determination "must be objectively unreasonable, not merely wrong; even clear error will not suffice." *Woods*, 575 U.S. at 316 (cleaned up).

On factual issues, AEDPA precludes federal habeas relief unless the state court's adjudication of the merits was based on an "unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(2); *see Martinez v. Caldwell*, 644 F.3d 238, 241-42 (5th Cir. 2011).

### C.   **Summary Judgment Standard**

In ordinary civil cases, a district court considering a motion for summary judgment is required to construe the facts of the case in the light most favorable to the non-moving party. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986). "As a general principle,

Rule 56 of the Federal Rules of Civil Procedure, relating to summary judgment, applies with equal force in the context of habeas corpus cases." *Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir. 2000). However, AEDPA modifies summary judgment principles in the habeas context, and Rule 56 "applies only to the extent that it does not conflict with the habeas rules." *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002), *overruled on other grounds by Tennard v. Dretke*, 542 U.S. 274 (2004); *see Torres v. Thaler*, 395 F. App'x 101, 106 n.17 (5th Cir. 2010). "Therefore, § 2254(e)(1)—which mandates that findings of fact made by a state court are presumed to be correct—overrides the ordinary summary judgment rule that all disputed facts must be construed in the light most favorable to the nonmoving party." *Smith*, 311 F.3d at 668.

## III.   ANALYSIS

Webb's amended federal petition raises sixteen claims for relief:

1. His appellate counsel was constitutionally ineffective because he failed to raise a double-jeopardy claim after entry of a directed verdict;

2. His trial counsel was constitutionally ineffective because he conceded Webb's guilt during closing argument;

3. His trial counsel was constitutionally ineffective because counsel had a conflict of interest due to his newborn baby's medical condition;

4. His trial counsel was constitutionally ineffective because he failed to investigate and interview State witnesses;

5. The trial court abused its discretion and violated Webb's due-process rights when it altered a limiting instructions regarding evidence of extraneous offenses;

6. The evidence was insufficient to support Webb's conviction;

12 / 36

7.  His trial counsel was constitutionally ineffective because he failed to challenge the State's evidence regarding prior offenses and because Webb's trial continued after a motion for directed verdict was granted, in violation of the protection against double jeopardy;

8.  Webb was convicted in violation of the protection against double jeopardy because his trial continued after the court granted his motion for a directed verdict;

9.  The trial court abused its discretion when handing down a sentence that was illegal because the elements of the crime were not proven beyond a reasonable doubt;

10. Webb is actually innocent and the prosecutor, defense counsel, and trial court colluded to obtain his conviction;

11. The state habeas court committed plain error when it incorrectly recited the statute under which Webb was indicted;

12. The prosecutors committed misconduct and violated Webb's rights to due process and a fair trial when they continued with the prosecution after the trial court granted a directed verdict;

13. Webb was denied due process when the trial court allowed the trial to continue after granting a motion for directed verdict;

14. Webb's trial and appellate counsel were constitutionally ineffective because his trial counsel had a conflict of interest and because neither counsel raised the issue of double jeopardy;

15. The trial court abused its discretion by denying Webb an evidentiary hearing; and,

16. The trial court abused its discretion by giving an erroneous jury instruction that denied Webb his due process rights and relieved the prosecution of its burden of proof on every element.

(Dkt. 15, at 6-7, 11-14).  Claims 1-6 correspond to Webb's claims in his initial state habeas application (Dkt. 31-23, at 5-26).    Claim 7 corresponds to the claim in his "supplementation" filed in state habeas proceedings before the state habeas court ruled on

his claims (*id*. at 152).  Claims 8-15 correspond to claims in the supplemental habeas applications Webb filed in the state habeas court after the Court of Criminal Appeals had denied relief (Dkt. 31-31, at 4-11; Dkt. 31-32, at 8-11).  Webb did not raise Claim 16 in the state courts.

The respondent argues that Webb's ineffective-assistance-of-appellate-counsel claim (Claim 1), ineffective-assistance-of-trial-counsel claims (Claims 2-4 & 7), and due-process claim (Claim 5) should be denied on the merits, and that Claims 6 & 8-16 are procedurally barred.

### A.     Ineffective Assistance of Appellate Counsel (Claim 1)

Webb claims in Claim 1 that his appellate counsel was constitutionally ineffective because he failed to raise a double-jeopardy claim on direct appeal.  He argues that his conviction was unconstitutional because, after the trial court had granted a directed verdict on a single-count indictment, the protection against double jeopardy barred any further proceedings (Dkt. 15, at 6).

Webb was charged by indictment with "intentionally or knowingly engag[ing] in sexual contact with [the complainant] by touching the genitals or breast of [the complainant], a child younger than 17 years of age" (Dkt. 31-14, at 5).  The governing Texas statute defined "sexual contact" as touching "the anus, breast, or any part of the genitals of a child," including "touching through clothing." *See* TEX. PENAL CODE § 21.11(c)(1) (eff. Sept. 1, 2009, through Aug. 31, 2017)).  The trial record reflects R.G.'s testimony that Webb touched her breast through her clothing but that he was not able to

touch her genital area (Dkt. 31-18, at 42-43).  After the testimony, Webb's counsel moved for a directed verdict regarding contact with the complainant's genital area (*id.* at 136), and the court granted the motion (*id*. at 142).  The court then instructed the jury to consider whether the evidence showed, beyond a reasonable doubt, that Webb had engaged in sexual contact "by touching the breast of R.G." (Dkt. 31-14, at 48-49), and the jury convicted him of the offense.  On habeas review, Webb claims that his appellate counsel should have raised a claim that his conviction, coming after a directed verdict, violated the constitutional protection against double jeopardy.

A criminal defendant is entitled to effective assistance of counsel on direct appeal. *Evitts v. Lucey*, 469 U.S. 387 (1985); *Dorsey v. Stephens*, 720 F.3d 309, 319-21 (5th Cir. 2013).  A petitioner must show that counsel's performance was deficient and that the petitioner was prejudiced. *Id.* at 319 (citing *Strickland v. Washington*, 466 U.S. 668 (1984)). A court's review under *Strickland* is "highly deferential," and "doubly deferential" on habeas review when the standards of § 2254(d) apply. *Richter*, 562 U.S. at 105. A habeas petitioner must overcome "a strong presumption that counsel's conduct falls within the range of reasonable professional assistance." *Higgins v. Cain*, 720 F.3d 255, 265 (5th Cir. 2013) (cleaned up). Moreover, appellate counsel is not required to "raise every nonfrivolous ground of appeal available." *Dorsey*, 720 F.3d at 320 (cleaned up). "[A]ppellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Smith v. Robbins*, 528 U.S. 259, 288 (2000). Effective

15 / 36

advocates "winnow[] out weaker arguments on appeal" and focus on key issues. *Higgins*, 720 F.3d at 265 n.41 (cleaned up).  A prejudice showing for an ineffective-assistance-of-appellate-counsel claim requires a showing of "a reasonable probability that, but for his counsel's [errors], [the petitioner] would have prevailed on his appeal." *Robbins*, 528 U.S. at 285.

In this case, the state habeas court considered Webb's claim regarding his counsel's failure to raise a double-jeopardy issue on appeal and found that it had "no factual support" (Dkt. 31-23, at 158).  The court determined that "evidence at trial established that [Webb] touched R.G. on her breast;" that R.G. "testified that [Webb] was never able to touch her genital area;" that the trial court had granted Webb's motion for directed verdict regarding the allegation of contact with the genital area; and that "the jury charge in [Webb's] case only authorized jurors to convict [Webb] if they unanimously found beyond a reasonable doubt that [he] touched R.G.'s breast" (*id*. at 157-58).  The court concluded that the jury was properly instructed and that Webb had failed to show either deficient performance or prejudice (*id*.  at 178).[1]

Webb claims that his appellate counsel's performance was deficient because, although Webb was charged in a one-count indictment, the trial court granted a directed verdict as to genitals but refused to enter a verdict of "not guilty."  He claims that appellate

---

[1]     Webb's appellate counsel's affidavit, which the state habeas court found credible, stated that counsel did not raise the issue because "any error would have been harmless given the ability of the State to abandon the genital contact or elect the breast contact language for the jury charge" (*id*. at 110).

counsel failed to argue that the plain meaning of the statute governing directed verdicts "required that a verdict of not guilty be entered as it relates to count one of the indictment" and that the statute "makes no mention of severing portions of a count" (Dkt. 44, at 14) (citing TEX. CODE CRIM. PROC. art. 45.032). He further argues without elaboration that his appellate counsel's reasoning in the affidavit regarding the issue is "unpersuasive" (*id*. at 16).

This Court must defer to the state habeas court's determination that the jury was properly instructed (Dkt. 31-23, at 158, 178). Under § 2254(d), Webb's arguments in this Court are insufficient to demonstrate that the state habeas court's determination regarding deficient performance was contrary to, or an unreasonable application of, *Strickland*. He also fails to show that he was prejudiced because he does not demonstrate a reasonable probability that, but for his counsel's failure to raise a double-jeopardy claim, he would have prevailed on his appeal. *See Robbins*, 528 U.S. at 285. He therefore does not show that habeas relief is warranted under 28 U.S.C. § 2254(d).

### B.   Ineffective Assistance of Trial Counsel (Claims 2, 3, 4, & 7)

Webb claims that his trial counsel was constitutionally ineffective because counsel conceded Webb's guilt in closing arguments (Claim 2); had a conflict of interest (Claim 3); failed to interview and investigate State's witnesses (Claim 4); and failed to prevent the continuation of his trial after entry of a directed verdict (Claim 7). The state habeas court determined that each of his claims lacked merit.

1.      **Legal standards**

Under *Strickland*, a criminal defendant claiming ineffective assistance of counsel must show that defense counsel rendered deficient performance and that the defendant was prejudiced:

> To demonstrate deficient performance, the defendant must show that, in light of the circumstances as they appeared at the time of the conduct, "counsel's representation fell below an objective standard of reasonableness" as measured by "prevailing professional norms." There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." . . . .
>
> To demonstrate prejudice under *Strickland*, [the defendant] must show that counsel's deficient performance was "so serious as to deprive him of a fair trial, a trial whose result is reliable." This requires the showing of a reasonable probability that but for counsel's deficiencies, the result of the proceeding would have been different.

*Rhoades v. Davis*, 852 F.3d 422, 431-32 (5th Cir. 2017) (quoting *Strickland*, 466 U.S. at 687-89, 694). *Strickland* defines a "reasonable probability" as "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. This requires a "substantial, not just conceivable, likelihood of a different result." *Pinholster*, 563 U.S. at 189 (cleaned up). The petitioner's burden to show a "reasonable probability" of changed outcome is less than a preponderance:

> The question is not whether the defendant would more likely than not have received a different verdict . . . but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence.

*Kyles v. Whitley*, 514 U.S. 419, 434 (1995); *see United States v. Dominguez Benitez*, 542 U.S. 74, 83 n. 9 (2004). The prejudice inquiry is focused on the "fairness of the trial and

the reliability of the . . . verdict in light of any errors made by counsel, and not solely the outcome of the case." *White v. Thaler*, 610 F.3d 890, 912 (5th Cir. 2010) (cleaned up).

Review of counsel's performance is deferential, and counsel enjoy a strong presumption that their conduct is within the "wide range" of the bounds of professional norms. *Strickland*, 466 U.S. at 689. A petitioner's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. Any "strategic decisions" made by trial counsel "must be given a strong degree of deference." *Rhoades*, 852 F.3d at 432. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690; *see Rhoades*, 852 F.3d at 434.

On habeas review, when a state court has adjudicated an ineffective-assistance-of-counsel claim on the merits, the petitioner bears an especially heavy burden. The question is not whether the state court's application of *Strickland* was incorrect, but rather whether it was unreasonable.

> The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Richter*, 562 U.S. at 105 (cleaned up). *See Trottie v. Stephens*, 720 F.3d 231, 240-41 (5th Cir. 2013) ("'even a strong case for relief does not mean the state court's contrary conclusion was unreasonable'" (quoting *Richter,* 562 U.S. at 102)).

### 2.     Claim 2

Webb argues that his trial counsel was ineffective because counsel conceded Webb's guilt in front of the jury during closing argument and failed to meaningfully test the State's case (Dkt. 15, at 6).  The trial transcript reflects that, in his closing argument, Webb's counsel stated to the jury, "Evidence you heard from the State is sufficient (sic) to prove sexual contact" (Dkt. 31-19, at 49).[2]

The state habeas court denied Webb's claim based on its determination that counsel's remarks, "when viewed in context of his whole argument, were not a concession of [Webb's] guilt" (Dkt. 31-23, at 159).  The habeas court reproduced the challenged argument in its larger context, as follows:

> You may find it disgusting to sit there and have to find somebody not guilty -- somebody who's accused of being a perpetrator, accused of being a pervert. I don't care if it makes your stomach crawl. You've got a duty, and that duty will be to protect the rights of the citizen accused. As distasteful as you may personally think it might be, that is the world that you find yourself in -- each individual -- before you can come to a collective decision, before you can decide whether that presumption of innocence has been shattered, and whether or not this remains to be a citizen accused or a scheming, conniving predator.
>
> I think about the testimony you heard and I think about the excuses that the State of Texas gives of why they don't have more evidence for you. I'm just perplexed.
>
> ***Evidence that you heard from the State's position is sufficient [sic] to prove sexual contact.*** September 26th, 2013, Brazos County, intent to arouse or gratify, but sexual contact. Touching by a person -- touching. That's all you need to do right there. Shoot, take that on the first page and circle it. Sexual contact means any touching. Did that touching happen? That is the lynchpin,

---

[2]      The "sic" notation appears in the trial transcript.

that's the crux, that's the center of this case; and you ain't got the evidence to believe that beyond a reasonable doubt.

Was she younger than 17? Yes. Touching. Her allegation is breast. Okay? If you believe her, you believe that he touched her, then you're going to believe that he touched her on the breast. That's what he's charged with. Touching. Touching. Touching. Touching. That is the focus of your thoughts, that's the focus of your deliberation. That is what has to be proved to you beyond a reasonable doubt.

… Only evidence that you have of touch comes from a young lady who's inconsistent, who is fabricating a story for whatever motive, whatever reason. I don't really care. . . .

Until you find otherwise, Everett Webb just sits in front of you as the citizen accused -- not as a pervert, not as a predator, not as a schemer, not as a conniver. Just a citizen accused. You got to do according to the law the Judge gives you and the evidence that you heard and the lack of evidence that pushes -- that shatters the presumption of innocence. You've got a duty, and that duty is to find Everett Webb not guilty. A true verdict. Not if. A true verdict. Not guilty. Thank you.

(*id*. at 159-61 (quoting trial record)) (emphasis added). The habeas court then determined that, "rather than conceding guilt, [counsel] advocated that [Webb] was innocent, and urged jurors to hold the State to its burden of proof" (*id*. at 161), and that the claim was "without any legal basis" (*id*. at 179).

In this federal proceeding, Webb argues that there is a "reasonable probability" that the jury "tuned out" the balance of the closing argument after counsel made the "damning" concession of guilt and that, whether or not counsel misspoke, the harm had been done (Dkt. 44, at 7-8). He seeks relief based on *McCoy v. Louisiana*, 138 S. Ct. 1500 (2018), a capital case in which defense counsel conceded his client's guilt as part of counsel's trial

strategy. The Supreme Court held that the defendant's Sixth Amendment rights had been violated:

> We hold that a defendant has the right to insist that counsel refrain from admitting guilt, even when counsel's experienced-based view is that confessing guilt offers the defendant the best chance to avoid the death penalty. Guaranteeing a defendant the right "to have the Assistance of Counsel for his defence," the Sixth Amendment so demands. With individual liberty—and, in capital cases, life—at stake, it is the defendant's prerogative, not counsel's, to decide on the objective of his defense: to admit guilt in the hope of gaining mercy at the sentencing stage, or to maintain his innocence, leaving it to the State to prove his guilt beyond a reasonable doubt.

*Id.* at 1505 (cleaned up). The Supreme Court noted that McCoy's counsel had pursued the strategy over the defendant's strenuous objections. *Id.* Webb argues that the state habeas decision was contrary to, or an unreasonable application of, *McCoy*.

The record of this case does not reflect that Webb's counsel conceded guilt over Webb's objections. To the contrary, the state habeas court determined that Webb's counsel had *not* conceded guilt, strategically or otherwise, but rather had urged jurors to hold the prosecution to its burden of proof. Webb does not demonstrate that his counsel rendered deficient performance or that he was prejudiced by the performance. He also does not show that the state habeas court's factual findings were unreasonable in light of the state court record or that its decision was contrary to, or an unreasonable application of, *McCoy*. *See* 28 U.S.C. § 2254(d).

### 3.    Claim 3

Webb claims that his trial counsel had a conflict of interest because, approximately three months before trial began, counsel's newborn baby was in an intensive care unit. On

22 / 36

December 12, 2016, counsel sent an email to the prosecutor and the court stating that he would not "be mentally in a place where [he] could try a child sex case" on January 9, 2017 (Dkt. 38-1, at 15).  In state habeas proceedings, in response to this claim, counsel filed an affidavit stating that he had written the email on the day his child was born and that, when trial started on March 21, 2017, he was "more than prepared" to "zealously advocate" for his client (Dkt. 31-23, at 115).

Although Webb argues that his counsel had a conflict of interest, this case does not present an alleged conflict between counsel's representation of Webb and his representation of a different client.  *See Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980) (a petitioner can demonstrate a violation of his Sixth Amendment rights by showing that his attorney's performance was adversely affected by an actual conflict of interest).  Rather, Webb argues that his counsel was conflicted due to counsel's self-interest, in particular, the demands of his personal life.  The Firth Circuit has held that, in such a case, *Strickland* standards apply. *See Beets v. Scott*, 65 F.3d 1258, 1265-66 (5th Cir. 1995) (en banc) (holding that *Cuyler* applies to attorney conflicts due to representation of "multiple or serial" clients, but that *Strickland* applies to cases in which "the lawyer's self-interest is pitted against the duty of loyalty to his client").

The state habeas court rejected Webb's *Strickland* claim, determining that counsel's affidavit credibly explained that the concerns in counsel's email had been resolved by the time trial began in March 2017; that counsel did not have a conflict of interest; that counsel zealously and effectively advocated for Webb at his trial; and that Webb had not shown

deficient performance or prejudice (Dkt. 31-23, at 162-63, 180). In these proceedings, Webb continues to argue that counsel's December email suggests that counsel was unable to defense those charged with sex crimes or to "competently represent" Webb, urging the Court to hold an evidentiary hearing to probe statements to the contrary in counsel's state habeas affidavit (Dkt. 44, at 8-10). However, the email underlying Webb's claim clearly stated that counsel would not be prepared to try the case on January 9, 2017 (Dkt. 38-1, at 15). Webb's assertion that the email demonstrates inability to represent him in March, when trial began, is insufficient to overcome the state habeas court's determination that the "concerns" in counsel's email "had been resolved" by the time of trial (Dkt. 31-23, at 162). Moreover, his argument does not challenge the habeas court's determination that trial counsel "zealously and effectively advocated" for Webb during trial (*id*. at 163). Webb has not shown that the state habeas court's decision was contrary to, or involved an unreasonable application of, *Strickland* or that it was based on an unreasonable determination of the facts in light of the state court record. *See* 28 U.S.C. § 2254(d).

### 4.    Claim 4

Webb claims that his trial counsel failed to investigate and interview witnesses for the prosecution, including the complainant's mother, her uncles, Sharell Davis, and the witnesses who testified about Webb's extraneous offenses (Dkt. 15, at 7; Dkt. 38, at 12-14).

As held in *Strickland*, "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*,

466 U.S. at 691; *see Newbury v. Stephens*, 756 F.3d 850, 873 (5th Cir. 2014). "In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 691. To establish prejudice for failure to investigate, "a petitioner must allege with specificity what the investigation would have revealed and how it would have changed the outcome of the trial." *Miller v. Dretke*, 420 F.3d 356, 361 (5th Cir. 2005); *see Hoffman v. Cain*, 752 F.3d 430, 440 (5th Cir. 2014) (cleaned up); *Woodfox v. Cain*, 609 F.3d 774, 808 (5th Cir. 2010). In the absence of such a showing, the claim is conclusory and subject to dismissal. *Day v. Quarterman*, 566 F.3d 527, 540-41 (5th Cir. 2009). The Fifth Circuit "has made clear that conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding." *Collier v. Cockrell*, 300 F.3d 577, 587 (5th Cir. 2002) (cleaned up).

Here, the state habeas court denied Webb's claim because Webb had failed to identify testimony from the State's witnesses that would likely have changed the outcome of trial (Dkt. 31-23, at 165-66). The court also determined that trial counsel's affidavit was credible and refuted the claim, and that Webb had failed to show either deficient performance or prejudice (*id*. at 165-66, 181-82). In these proceedings, Webb argues that counsel failed to interview the witnesses and could not have known what the witnesses would say without a full investigation (Dkt. 38, at 9, 15). However, counsel's affidavit in state habeas proceedings averred that his investigator had interviewed all witnesses

identified by Webb (Dkt. 31-23, at 115-16; *see id.* at 122-23 (investigator's invoice)). Webb fails to show deficient performance under *Strickland*.[3]

Webb also presents new evidence based on his current counsel's investigation in January 2023 into T.T., who testified regarding an extraneous offense. Counsel avers that, based on his investigation, he believes that T.T. was arrested three times, in 2015, 2018, and 2020 (Dkt. 44-1, at 2). He argues that, although two of the arrests occurred after Webb was convicted, "they clearly show a pattern of misbehavior which would reasonably lead one to believe that T.T. previously engaged in criminal activity and that an investigation would have uncovered evidence of her poor character" (Dkt. 44, at 12).

The Court's review under § 2254(d) is limited to the evidence in the state court record. *See* 28 U.S.C. § 2254(d)(2); *Pinholster*, 563 U.S. at 181-82. In any event, even assuming the Court could consider the evidence now presented by Webb, the question for this Court applying § 2254(d) is whether the state habeas court's adjudication of this claim was contrary to, or an unreasonable application of, *Strickland*. As noted above, the state habeas court credited trial counsel's affidavit, which stated that his investigator had interviewed the witnesses in question and had run comprehensive background checks for all witnesses identified by Webb. *See* Dkt. 31-23, at 115-16; *id.* at 122-23 (investigator's

---

[3]     Additionally, although Webb argues that truthful testimony from the witnesses could have shown that the complainant's clothes were not torn (Dkt. 44, at 12), the issue was litigated at trial. *See Webb*, 575 S.W.3d at 909 (discussing defense counsel's arguments and strategy at trial to "highlight[] differences between R.G.'s testimony and statements made to law enforcement regarding clothing that was allegedly ripped during the incident").

invoice includes billing for background checks on all witnesses). The state habeas court also concluded that Webb had failed to demonstrate deficient performance or prejudice (*id.* at 181-82). Therefore, even assuming that the evidence were properly before the Court, Webb's recent evidence about a purported arrest of one witness in 2015 would be insufficient to demonstrate that this determination was contrary to, or an unreasonable application of, *Strickland*. *See Miller*, 420 F.3d at 361 (to show prejudice, "a petitioner must allege with specificity what the investigation would have revealed and how it would have changed the outcome of the trial"); *Richter*, 562 U.S. at 105 ("[t]he question [on habeas review] is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard").

### 5.    Claim 7

Webb argues that his trial counsel was ineffective because he failed to argue that the prosecutor used Webb's prior convictions "for a dual purpose" (Dkt. 15, at 11). This claim apparently pertains to the directed verdict as to genitals, which Webb refers to as an "acquittal," and the fact that Webb was convicted of sexual contact with the complainant's breast after the directed verdict was entered.[4]

---

[4]    *See id.* (arguing that his right to due process was violated because he "was hauled into court under duplicitous information"; because "at no point was there a waiver nor an election by [the prosecutor] prior to [Webb] pleading not guilty to the charges"; and because, after the trial court granted a directed verdict "on the entire count," the prosecutor "chose to combine these offense[s]" and the trial court "used its authority to sever [the] indictment to give the State another opportunity to convict [Webb] after being acquitted"); Dkt. 38, at 17 (arguing that his trial counsel failed to require the State to prove every element of the offense beyond a reasonable doubt because, after the judge granted the motion for a directed verdict as to genitals, "Webb could not possibly be found guilty of every accusation in his one count indictment").

Webb raised this claim in his state habeas "supplementation" filed on July 6, 2021. The state habeas court determined that the claim lacked "any factual basis" and concluded that Webb had failed to show error or a constitutional violation (Dkt. 31-23, at 172-74, 187-89).  As stated above, the state habeas court squarely rejected Webb's claims regarding the directed verdict and double jeopardy.  In these proceedings, Webb fails to show that the state habeas court unreasonably applied *Strickland*, or made an unreasonable determination of the facts in light of the evidence presented, when it rejected his claim. *See* 28 U.S.C. § 2254(d).

### C.   Due Process (Claim 5)

Webb claims that the trial court abused its discretion and denied him due process because, after the court and Webb's counsel had agreed to the language for a limiting instruction regarding extraneous-offense evidence, the court altered the instruction. (Dkt. 15, at 11; Dkt. 44, at 17).

The Fourteenth Amendment's Due Process Clause protects a state defendant's right to a fundamentally fair trial. *Rogers v. Lynaugh*, 848 F.2d 606, 608 (5th Cir. 1988) (citing, *inter alia*, *Darden v. Wainwright* 477 U.S. 168, 181 (1986)); *Kirkpatrick v. Blackburn*, 777 F.2d 272, 278 (5th Cir. 1985) (citing, *inter alia*, *United States v. Bagley*, 473 U.S. 667 (1985). On habeas review, a petitioner bringing a claim based on a trial court's error must show prejudice by demonstrating that the error had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (cleaned up).

28 / 36

Here, the state habeas court denied relief because it found that, although the trial court had given an erroneous instruction, Webb's trial counsel did not object and the jury "was ultimately given a proper extraneous offense instruction" (Dkt. 31-23 at 167-68). It also determined that Webb's claim that he was denied a hearing was "not credible" because the trial court had held a hearing, outside the jury's presence, regarding testimony from extraneous victims (*id*. at 168-69). The court concluded that Webb had failed to demonstrate harm from the erroneous instruction; that the issue, which had been litigated and resolved during Webb's direct appeal, could not be relitigated on habeas review; that the "extraneous offense evidence was properly admitted to rebut [Webb's] defensive theory of fabrication;" and that Webb's claim lacked merit (*id*. at 182-84).

In these federal proceedings, Webb argues that the complainant's testimony at his trial was weak and that the prosecution relied heavily on extraneous-offense evidence to obtain a conviction (Dkt. 44, at 2, 16-18). He points to the dissent from the appellate court and argues that the prosecution should be required to prove the offense rather than that "the allegations are in conformity with [the defendant's] character." *See Webb*, 575 S.W.3d at 915 (Gray, C.J., dissenting).

Under § 2254(d), the only question before the Court is whether the state habeas court reached a decision on Webb's claim that was contrary to, or an unreasonable application of, clearly established law, or whether it was based on an unreasonable determination of the facts based on the state record. Even if Webb could show "clear error" by the state court, the showing would not warrant habeas relief. *See Woodall*, 572 U.S. at

419. Rather, AEDPA requires him to show that the state court ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 419-20 (cleaned up). The state habeas court, which considered the dissenting opinion from Webb's appeal, rejected Webb's claim that the trial was fundamentally unfair, determining that the issue had been resolved on direct appeal and that the evidence was properly admitted. Web's arguments in this Court do not demonstrate that he is entitled to relief under § 2254(d).

### D.     <u>Exhaustion and Procedural Default</u>

The respondent argues that Claims 6 & 8-16 are procedurally barred. Webb concedes that Claim 6, which challenges the sufficiency of the evidence, is not cognizable on habeas review (Dkt. 44, at 4). He argues that Claims 8-15 were exhausted by his supplemental filings in October and November 2021 (*id.*).

Under the exhaustion doctrine, AEDPA precludes federal relief on constitutional challenges that an inmate has raised for the first time in federal court. *See* 28 U.S.C. § 2254(b)(1). To comply with exhaustion, a petitioner must "fairly present his legal claim to the highest state court in a procedurally proper manner." *Nickleson v. Stephens*, 803 F.3d 748, 753 (5th Cir. 2015) (cleaned up); *see Jones v. Dretke*, 375 F.3d 352, 354-55 (5th Cir. 2004).[5] The federal claim "must be the substantial equivalent of the claim brought before

---

[5]     To exhaust a claim in Texas, a petitioner must present the claim in a procedurally proper manner to the state's highest court of criminal jurisdiction—the Texas Court of Criminal Appeals—by taking one of these paths: (1) the petitioner may file a direct appeal followed, if necessary, by a petition for discretionary review in the Texas Court of Criminal Appeals; or (2) he may petition for a writ of habeas corpus under Article 11.07 of the Texas Code of Criminal

the State court." *Young v. Davis*, 835 F.3d 520, 525 (5th Cir. 2016) (cleaned up); *see Lucio v. Lumpkin*, 987 F.3d 451, 464 (5th Cir. 2021) ("a state prisoner who does not fairly present a claim to a state habeas court—specifying both the legal and factual basis for the claim—may not raise that claim in a subsequent federal proceeding").

As a corollary to exhaustion, the federal procedural-default doctrine requires inmates to litigate claims in compliance with state procedural law. *See Dretke v. Haley*, 541 U.S. 386, 392 (2004); *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991). If a petitioner with an unexhausted claim would be barred from returning to state court by Texas' abuse-of-the-writ doctrine, TEX. CODE CRIM. PROC. art. 11.07 § 4, the claim is barred under the federal procedural-default doctrine. *Young*, 835 F.3d at 525; *Nobles v. Johnson*, 127 F.3d 409 (5th Cir. 1997). To overcome the default and obtain federal habeas review, a petitioner must demonstrate either "cause for the default and actual prejudice as a result of the alleged violation of federal law," or that "failure to consider the claims will result in a fundamental miscarriage of justice." *Williams v. Thaler*, 602 F.3d 291, 307 (5th Cir. 2010) (cleaned up). The fundamental-miscarriage-of-justice exception to procedural default is limited to cases in which a petitioner demonstrates that a constitutional violation has probably resulted in the conviction of one who is actually innocent. *Garza v. Stephens*, 738 F.3d 669, 675 n.3 (5th Cir. 2013); *Hughes v. Quarterman*, 530 F.3d 336, 341-42 (5th Cir. 2008).

---

Procedure in the convicting court, which is transmitted to the Texas Court of Criminal Appeals once the trial court determines whether findings are necessary.  *See* TEX. CODE CRIM. PROC. art. 11.07 § 3(c); *Busby v. Dretke*, 359 F.3d 708, 723 (5th Cir. 2004).

In this case, Webb did not raise Claims 8-16 in his petition for discretionary review or his initial state habeas application. Although he raised Claims 8-15 in his two supplements to his habeas application, he filed both supplements after the Court of Criminal Appeals denied habeas relief on August 25, 2021. *See* Dkt. 31-31, at 4-11 (supplement dated Oct. 11, 2021); Dkt. 31-32, at 8-11 (supplement dated Nov. 3, 2021). Neither the trial court nor the Court of Criminal Appeals issued any orders regarding either supplement. *See* Dkt. 31-31; Dkt. 31-32. Webb's supplements were untimely and thus not "fairly presented" to the state courts. *See Nickleson*, 803 F.3d at 753; *Wheat v. Johnson*, 238 F.3d 357, 360-61 (5th Cir. 2001) (affirming holding that a petitioner did not have a constitutional right to have his late-filed supplement considered on the merits by the state habeas court).

Because the state courts did not review the claims on the merits or have the opportunity to correct the alleged violations of his rights, his claims are unexhausted. *See Jones*, 375 F.3d at 354-55 (the presentation requirement gives state courts "an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights") (cleaned up)); *Loynachan v. Davis*, 766 F. App'x 156, 159 (5th Cir. 2019) (to be exhausted, a claim must be presented in a procedural context in which state courts *necessarily* review the claim on the merits) (emphasis original) (citing *Castille v. Peoples*, 489 U.S. 346, 351 (1989)). If Webb now returned to the state courts to exhaust his claims, the Court of Criminal Appeals would dismiss the application as subsequent. *See* TEX. CODE. CRIM.

PROC. art. 11.07, § 4. His claims therefore are barred under the procedural-default doctrine. *See Young*, 835 F.3d at 525.

Webb does not show that he had cause or prejudice for failure to raise his claims in his initial state habeas application, *i.e.*, before the state habeas court had adjudicated his claims. Dkt. 38; Dkt. 44; *see Williams*, 602 F.3d at 307. He argues that the state habeas court should have considered his late-filed supplements because he was *pro se* or because he raised an actual-innocence claim (Dkt. 44, at 4-5) (citing TEX. R. APP. P. 68.10; *Ex parte Elizondo*, 947 S.W.2d 202 (Tex. Crim. App. 1996)). However, a petitioner's *pro se* status, without more, is insufficient to establish cause. *See Maples v. Thomas*, 565 U.S. 266, 280 (2012) (cause for a procedural default exists only "where something external to the petitioner, something that cannot fairly be attributed to him, impeded his efforts to comply with the State's procedural rule") (cleaned up); *McAdams v. Collins*, 3 F.3d 436 (5th Cir. 1993) ("[t]he petitioner's *pro se* status or lack of counsel at previous habeas proceedings do not qualify as legitimate causes because these conditions are not external to his defense"). Additionally, to the extent Webb relies on state procedure or law in support of his argument, or on infirmities in the state habeas proceedings, federal habeas relief is unavailable. *See* 28 U.S.C. § 2254(a) (a federal court shall entertain a habeas petition from a person in state custody "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States"); *Wheat*, 238 F.3d at 360-61 (infirmities in state habeas proceedings are not proper grounds for habeas relief); *Brown v. Thaler*, 455 F. App'x 401, 406 & n.11 (5th Cir. 2011) (a federal habeas court lacks

jurisdiction "to grant habeas relief based on a state court's improper application of state procedural law"). He therefore does not demonstrate cause or prejudice to overcome the procedural default.

Webb also does not demonstrate that failure to consider his defaulted claims will result in a fundamental miscarriage of justice. *See Garza*, 738 F.3d at 675 n.3 (the fundamental-miscarriage-of-justice exception is limited to cases in which a constitutional violation has probably resulted in the conviction of one who is actually innocent). He presents an actual innocence claim in Claim 10 of his federal petition, arguing that he was actually innocent of contact with the complainant's genitals, as distinguished from her breast (Dkt. 15, at 12). However, Webb's arguments are unavailing because the statute under which he was charged defines an offense as sexual contact with "the anus, breast, ***or*** any part of the genitals of a child," and thus authorized conviction based on contact only with the breast. TEX. PENAL CODE § 21.11(a)(1) (eff. Sept. 1, 2009, through Aug. 31, 2017) (emphasis added); *see* Dkt. 31-14, at 5 (indictment in Webb's case charged him with sexual contact with the complainant's "genitals or breast"). Additionally, he does not present any new, reliable evidence of innocence. *See McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013); *see Floyd v. Vannoy*, 894 F.3d 143, 155 (5th Cir. 2018).[6] Webb therefore does not show

---

[6] To the extent Webb argues that his actual innocence is established by testimony or potential testimony that the complainant's clothing was not torn during the crime (Dkt. 44, at 12), the statute defined sexual contact as including "touching through clothing" and, moreover, the issue of torn clothing was litigated at trial and is not new evidence. *See* TEX. PENAL CODE § 21.11(c)(1) (eff. Sept. 1, 2009, through Aug. 31, 2017); *Webb*, 575 S.W.3d at 909.

that he was innocent of indecency with a child by sexual contact, and his argument that he suffered a fundamental miscarriage of justice must fail.

Claims 8-16 are defaulted and habeas relief is unavailable. *See Williams*, 602 F.3d at 307.

## III.   <u>CERTIFICATE OF APPEALABILITY</u>

Habeas corpus actions under 28 U.S.C. § 2254 or § 2255 require a certificate of appealability to proceed on appeal.  28 U.S.C. § 2253(c)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003).  Rule 11 of the Rules Governing Section 2254 Cases requires a district court to issue or deny a certificate of appealability when entering a final order that is adverse to the petitioner.

A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires a petitioner to demonstrate "'that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).  Under the controlling standard, a petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 336 (cleaned up).  Where denial of relief is based on procedural grounds, the petitioner must show not only that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would

find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484; *see Pierre v. Hooper*, 51 F.4th 135, 137 (5th Cir. 2022) (a certificate of appealability may not issue based solely on a debatable procedural ruling).

A district court may deny a certificate of appealability, *sua sponte*, without requiring further briefing or argument. *Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). After careful review of the pleadings and the applicable law, the Court concludes that reasonable jurists would not find its assessment of the claims debatable or wrong. Because the petitioner does not allege facts showing that his claims could be resolved in a different manner, a certificate of appealability will not issue in this case.

## IV.  <u>CONCLUSION</u>

For the reasons stated above the Court **ORDERS** as follows:

1.      The respondent's motion for summary judgment (Dkt. 30) is **GRANTED**.

2.      Webb's petition for a writ of habeas corpus is **DISMISSED**.

3.      A certificate of appealability is **DENIED**.

The Clerk will provide copies of this order to the parties.

SIGNED at Houston, Texas, on _____March 28_____, 2023.

GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE